IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


C.R.,[1]

                Plaintiff,

vs.                              Case No. 20-1196-SAC

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
Administration,

                Defendant.


**MEMORANDUM AND ORDER**

This is an action appealing the denial of Social Security disability benefits. Plaintiff filed her application for benefits on April 15, 2018, alleging that she has been disabled since June 1, 2015. An administrative law judge (ALJ) conducted a hearing on April 5, 2019, considered the evidence, and decided on July 8, 2019 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. Standards of review

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] The initials are used to protect privacy interests.

"insured status" under the Social Security program.  See <u>Potter v.
Secretary of Health & Human Services</u>, 905 F.2d 1346, 1347 (10th
Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means
that the claimant is unable "to engage in any substantial gainful
activity by reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C. §
423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported
by substantial evidence and if the ALJ applied the proper legal
standards.  See <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir.
2009).  "Substantial evidence" is "'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
<u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019)(quoting
<u>Consolidated Edison Co. v. NLRB</u>, 305, U.S. 197, 229 (1938)).  This
standard is "not high," but it is "'more than a mere scintilla.'"
<u>Id.</u>, (quoting <u>Consolidated Edison</u>, 305 U.S. at 229).  It does not
require a preponderance of the evidence.  <u>Lax v. Astrue</u>, 489 F.3d
1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including
whatever in the record fairly detracts from the weight of the
defendant's decision, and on that basis decide if substantial
evidence supports the decision.  <u>Glenn v. Shalala</u>, 21 F.3d 983,
984 (10th Cir. 1994) (quoting <u>Casias v. Secretary of Health & Human</u>

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

"In addition, as long as '[the court] can follow the [ALJ's] reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.'"  Garcia v. Commissioner, SSA, 817 Fed.Appx. 640, 645 (10th Cir. 2020)(quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012)).  The court "'will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject.'"  Id., quoting Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009)).

II. The ALJ's decision (Tr. 12-18).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 13-14).  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the

claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fourth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits on September 30, 2016.  Second, plaintiff has not engaged in substantial gainful activity since June 1, 2015.

Third, plaintiff has the following severe impairments: fibromyalgia and spine disease.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that plaintiff is able: to lift and/or carry, push and/or pull 20 pounds occasionally, 10 pounds frequently; sit with normal breaks, for a total of six hours per eight-hour workday; stand and/or walk with normal breaks, for a total of six hours per eight-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; and frequently stoop, kneel, crouch, and crawl.

The ALJ determined that with this RFC plaintiff could perform her past relevant work as a salesperson as it is generally performed and as a manicurist.

III. <u>The denial of benefits shall be affirmed.</u>

    A. <u>ALJ's evaluation of the evidence</u>

Plaintiff's first argument to reverse the denial of benefits is that the ALJ failed to properly evaluate plaintiff's symptoms and limitations and that his decision is not supported by substantial evidence. The ALJ's decision, citing SSR 16-3p and 20 C.F.R. 404.1529(c), sets out factors an ALJ may consider when evaluating a claimant's symptoms. (Tr. 15). These factors

include: the objective evidence; plaintiff's statements and those of others; and other factors, including:  1) activities of daily living; 2) the location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the medications used and their side effects; 5) treatment other than medication; 6) measures other than medication to relieve pain; and 7) any other factors.  (Tr. 15).

The ALJ's decision then reviewed plaintiff's statements, her former work, measures taken for pain relief, activities of daily living, treatment records and statements from doctors.  (Tr. 16-17).  The ALJ cited treatment records indicating that plaintiff received pain relief and improvement in her symptoms from physical therapy and home exercise; that pain increased when she engaged in heavy activity such as helping her parents move; that no structural abnormalities were revealed by imaging; and neurological examination showed minimally reduced range of motion.  Part of the ALJ's discussion reads as follows:

> Records from the period immediately following the alleged onset date reveal that the claimant was engaged in physical therapy for chronic neck pain.  At the time, she reported periodic tingling in her upper extremities and mid thoracic spine.  She reported constant symptoms that worsened with heavy activity (Exhibit 3F at 14). Treatment notes indicate that the claimant experienced improvement in her symptoms, in terms of decreased pain intensity and frequency and decreased numbness with PT (Exhibit 3F at 18, 54, 82, 114).  Indeed, the claimant reported that with compliance with her home exercise program, her pain was less intense, she reported that her mid back pain was almost completely resolved, and

she reported that she experienced no pain when sleeping
(Exhibit 3F at 146).

(Tr. 16).  The ALJ also gave "partial" weight to the opinions of
two state agency doctors who concluded, after a review of
plaintiff's records, that plaintiff could perform medium work.
The ALJ found these opinions "only partially persuasive as the
opinions do not consider [plaintiff's] reduced upper extremity
strength," as noted in physical therapy records.  (Tr. 17).

Plaintiff argues that the ALJ's discussion of the evidence is
either conclusory or culminates in no conclusion, and that the ALJ
does not give good reasons for his findings or link his findings
to specific facts in the record.  It is obvious from the context
of the opinion, however, that the ALJ used the above-excerpted
discussion to support the conclusion in the previous paragraph of
the opinion which stated that plaintiff's account of the intensity,
persistence and limiting effects of her pain were not entirely
consistent with the medical evidence.  It is obvious as well that
the ALJ's discussion of other medical evidence was in support of
the RFC he set out at part 5 of the opinion (Tr. 15) prior to the
discussion.

Plaintiff also contends that the ALJ did not sufficiently
discuss facet arthropathy, fibromyalgia or anxiety as causing
pain.[2]  The ALJ, however, did not dispute that plaintiff had pain

---

[2] In addition, plaintiff asserts that the ALJ did not explain why medication
overuse was not indicative of severe pain.  See Tr. 586 (Dr. Murphy's report

causing conditions such as fibromyalgia and spine disease. He found that the record did not support plaintiff's claims that she was incapacitated by the pain. The decision has substantial support in the parts of the record cited by the ALJ.

   B. Obesity

   Next, plaintiff argues that the denial of benefits should be reversed because the ALJ did not analyze the impact of plaintiff's obesity upon her RFC. However, neither plaintiff nor her counsel at the administrative hearing asserted that obesity was a relevant factor contributing to plaintiff's functional limitations.[3] Plaintiff's list of medical conditions limiting work also does not mention obesity. (Tr. 182). Further, plaintiff does not cite evidence in the administrative record which attributes pain or a lack of functionality to obesity. Under these circumstances, the court finds that there was no error caused by failing to discuss plaintiff's obesity. See Smith v. Colvin, 625 Fed.Appx. 896, 899 (10th Cir. 2015)(ALJ not required to explicitly discuss the absence of evidence that obesity contributed to additional functional limitations or exacerbated any impairment); Rose v. Colvin, 634 Fed.Appx. 632, 637 (10th Cir. 2015)(ALJ's obligation to consider

---

suggesting medication overuse as a contributing cause of pain, not as a sign of pain severity). Contrary to plaintiff, the court believes the ALJ considered plaintiff's record of medications as set forth in plaintiff's pain questionnaire, plaintiff's treatment records, and plaintiff's testimony.
[3] This distinguishes this case from plaintiff's citation to R.T. v. Berryhill, 2019 WL 632732 *5 (D.Kan. 2/14/2019).

and discuss obesity limited when evidence does not indicate
functional limitations from obesity and ALJ included restrictions
for stooping, kneeling and crouching); <u>Gaines v. Colvin</u>, 2016 WL
8674691 *6 (W.D.Okla. 1/29/2016)(failure to mention obesity in
findings is not error where medical evidence and hearing testimony
does not describe limitations due to obesity).

   C. <u>Fibromyalgia</u>

   Plaintiff argues that the ALJ ignored SSR 12-2p when
discussing plaintiff's fibromyalgia.  The court finds no error.
The ALJ found that fibromyalgia was a severe impairment suffered
by plaintiff, although there was limited evidence.  (Tr. 16-17).
"[H]aving a pain-producing impairment does not necessarily mean a
person is disabled."  <u>Trujillo v. Commissioner, SSA</u>, 818 Fed.Appx.
835, 844 (10th Cir. 2020).  "SSR 12-2p distinguishes between a
fibromyalgia diagnosis and a finding that a person with that
diagnosis is disabled."  <u>Id.</u>

> [SSR 12-2p] notes that an ALJ "must ensure there is
> sufficient objective evidence to support a finding that
> the person's impairment(s) so limits the person's
> functional abilities that it precludes him or her from
> performing any substantial gainful activity."  SSR 12-
> 2p also stresses the importance of considering the
> claimant's longitudinal record in assessing the
> existence, severity, and disabling effects of
> fibromyalgia.

<u>Id.</u> (quoting SSR 12-2p).  The ALJ's examination of the plaintiff's
treatment records and consideration of plaintiff's activities of
daily living persuaded him that plaintiff retained the capacity to

do the type of work plaintiff previously performed. Similar findings were considered sufficiently supported by a comparable review of the evidence in <u>Tarpley v. Colvin</u>, 601 Fed.Appx. 641, 643 (10th Cir. 2015) and <u>L.S. v. Saul</u>, 2019 WL 5455822 *4 (D.Kan. 10/24/2019).

    D. <u>Helping parents move</u>

Plaintiff next faults the ALJ's decision on the grounds that the ALJ considered plaintiff's attempt to help her parents move as evidence that she could work, when actually the increased activity aggravated her symptoms. The court agrees with defendant that plaintiff has misconstrued the ALJ's opinion on this point. The ALJ was noting that an infrequent episode of heavier physical activity "corresponded with exacerbations of [plaintiff's] pain" (Tr. 16) at a time when plaintiff's pain trendline had been improving (see Tr. 373); he did not suggest that helping her parents move was evidence that plaintiff could perform work activity.

    E. <u>Medication and side effects</u>

Plaintiff asserts that the ALJ did not confront evidence relating to plaintiff's medication and its side effects. For anxiety, plaintiff takes Xanax which may cause drowsiness. Plaintiff has other medication that she takes or has taken, but she does not allege what the side effects are. Plaintiff did not claim before the ALJ that drowsiness or other drug side effects

caused functional limitations which prevented her from working. Because the side effects of medication were not raised as a substantial issue, the court finds that the ALJ should not be faulted for failing to address plaintiff's medication and the side effects in more detail.  See Sims v. Barnhart, 33 Fed.Appx. 944, 949 (10th Cir. 2002)(rejecting similar claim supported by only passing reference to side effects); see also, Trujillo, 818 Fed.Appx. at 841-42 (rejecting argument that ALJ was required to discuss evidence which claimant did not demonstrate was significantly probative); Zaloudek v. Colvin, 2015 WL 1304501 *6 (D.Kan. 3/23/2015)(failing to discuss documented side effects does not require reversal because ALJ is not required to discuss every piece of evidence).

F. Dr. Davison's opinions

Plaintiff contends that the ALJ improperly evaluated the opinions of plaintiff's treating physician, Dr. Joe Davison.  Dr. Davison completed two forms, both of which indicated that plaintiff was disabled from working.  One form stated that because of "escalating back pain" and "arm weakness" plaintiff could not sit, stand, walk or work for as much as an hour in a competitive workday, and lift up to 10 pounds only occasionally.  (Tr. 610).  The form also stated that plaintiff's "greatest disability is the limitation of her mobility" and that her disability has increased plaintiff's anxiety and depression.  (Tr. 612).   A second form

11

indicated that:  plaintiff could stand or walk five hours total in an eight-hour workday; plaintiff has myalgia in the upper back, shoulders and neck that keeps her from sitting or standing for more than one hour; and she has mild cervical stenosis and degenerative changes in her hip.  (Tr. 653-658).  The ALJ stated that Dr. Davison's opinions were not persuasive on the grounds that the opinions were not accompanied by or supported by objective evidence.

Dr. Davison's notes reflect "essentially normal findings" from an MRI of plaintiff's back, although plaintiff complained of chronic back pain which kept her from functioning.  (Tr. 290). His records also show:  negative SI joint (Tr. 292); no trigger points (Tr. 294); getting relief from chiropractor (Tr. 297 & 306); and normal strength (Tr. 307).  In his decision, prior to discussing Dr. Davison's opinions, the ALJ referred to the minimal findings in the MRI results (Tr. 17), an unremarkable or very minimal neurologic examination (Tr. 17), and physical therapy records that showed improvement in pain intensity and frequency (Tr. 16).

Here, contrary to plaintiff's argument, the ALJ did not "pick and choose" from an uncontradicted medical opinion.  Rather, the ALJ noted that Dr. Davison's opinions were not well-supported by portions of the medical record, including some of Dr. Davison's notes.  While the ALJ could have written a more comprehensive

12

review of the evidence, the court is able to follow the ALJ's reasoning and finds that the correct legal standards have been applied. Therefore, the court rejects plaintiff's arguments regarding the treatment of Dr. Davison's opinions. See Olson v. Commissioner, SSA, 843 Fed.Appx. 93, 96-97 (10th Cir. 2021)(rejecting challenge that argued for a more in-depth discussion of medical evidence).

G. Past relevant work

The ALJ stated that the record established that plaintiff's former jobs as a manicurist and salesperson were performed at the level of substantial gainful activity and qualified as past relevant work (PRW). (Tr. 18). The ALJ went on to state that plaintiff's RFC was sufficient to do those jobs as actually and generally performed (Tr. 18), although he said later that plaintiff may only work as a salesperson as generally performed. (Tr. 18). He referred to the vocational expert's testimony to support his findings. (Tr. 18).

Plaintiff contends that the ALJ skipped the required analysis before making these conclusions and that the finding that plaintiff performed the manicurist's job at the level of substantial gainful activity lacked support.[4] The court rejects these arguments.

_____

[4] Plaintiff does not make this contention regarding her former work as a salesperson.

13

1. Manicurist as past relevant work

PRW is work done within the past 15 years that was substantial gainful activity and that lasted long enough for a claimant to learn to do it.  20 C.F.R. 404.1565(a).  "Substantial gainful activity" is work that "(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  "Substantial work activity" is "work activity that involves doing significant physical or mental activities" and it "may be substantial even if it is done on a part-time basis."  20 C.F.R. § 404.1572(a). "Gainful work activity" is work activity done for pay or profit or usually done for pay or profit.  20 C.F.R. § 404.1572(b).  An ALJ, however, may rely on other substantial evidence, aside from earnings history, to make a substantial gainful activity finding. See Montoya v. Colvin, 649 Fed.Appx. 429, 431 (9th Cir. 2016)(earnings may be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity).

The ALJ found that plaintiff's jobs as salesperson and manicurist were performed at the level of substantial gainful activity, without describing his reasoning process.  (Tr. 18). Here, the court believes the following evidence is substantial evidence supporting the conclusion that plaintiff's prior work as a manicurist constituted substantial gainful activity.

Plaintiff testified that she worked as a manicurist "for many years," "a very long time," "at least 25 years," working "off and on."[5] (Tr. 49, 54, 56). She went to cosmetology school to learn how to do nails. (Tr. 56). Records indicate that plaintiff was self-employed. (Tr. 168-69). Plaintiff also testified that when she did nails "full-time," she worked eight hours a day or more (usually twelve and as much as fifteen a day or 65 hours a week). (Tr. 54-55). She reported that she made $3,000 a month from May 2011 to December 2012 (Tr. 53-54, 183), although this does not accord with records indicating she was employed as a salesperson during that time (Tr. 169-70).[6]

Thus, while there is a question as to whether plaintiff's earnings from doing nails were sufficient to support a finding that the manicurist position was substantial gainful activity, other uncontroverted facts developed from plaintiff's testimony and in the record constitute substantial evidence that the manicurist position was work activity involving significant physical and mental activity done for pay or profit, i.e., substantial gainful activity. Cf., Eyre v. Commissioner, SSA, 586 Fed.Appx. 521, 524 (11th Cir. 2014)(affirming finding that jobs as kitchen helper and hotel housekeeper were substantial gainful

---

[5] Plaintiff also reported that she worked as a manicurist from May 2011 to December 2012. (Tr. 183).
[6] A summary of earnings shows that plaintiff had $36,112.92 in earnings in 2012. (Tr. 176).

activity on basis of evidence on the energy, skill and physical activity of those jobs, where there was no evidence offered to rebut this conclusion). As those facts are uncontroverted, it was unnecessary for the ALJ to review them in his decision.  The court reiterates that plaintiff's argument does not apply to plaintiff's work as a salesperson.

### 2. Step four analysis and vocational expert

Plaintiff argues that the ALJ did not properly perform the step four evaluation process regarding past relevant work.  There are three phases to this process.  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  Phase one requires the ALJ to assess the claimant's physical and mental RFC.  Id.  Phase two requires the ALJ to "make findings regarding the physical and mental demands of the claimant's past relevant work."  Id.  Finally, phase three requires the ALJ to determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."  Id.

The ALJ may rely upon vocational expert testimony in making phase two and phase three findings, such as determining the demands of a claimant's past relevant work and whether a person with plaintiff's RFC can meet those demands.  Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).  The ALJ, however, may not delegate the phase two and phase three analysis to the vocational expert to

the extent that the assessment "takes place in the VE's head" and "we are left with nothing to review." Winfrey, 92 F.3d at 1025.

Here, the vocational expert provided information to the ALJ regarding the exertional level, skill level and Dictionary of Occupational Titles (DOT) code for plaintiff's prior employment as a salesperson and manicurist. (Exhibit No. 13E, Tr. 231). The vocational expert listened to plaintiff's testimony during the administrative hearing and determined that no changes were needed to this information. (Tr. 57). The ALJ referred to this information in his decision. (Tr. 18). The vocational expert testified that a person with the RFC described by the ALJ could perform both positions as the jobs are generally done. (Tr. 58). The ALJ relied upon this testimony to find that plaintiff was capable of performing her PRW as a salesperson and manicurist. The court finds that the ALJ made the proper findings, relying upon the VE's testimony, and suitably completed the step four analysis in this case. See Adcock v. Commissioner, SSA, 748 Fed.Appx. 842, 847-48 (10th Cir. 2018) (reliance upon similar VE testimony satisfies requirements of step four analysis); Zaricor-Ritchie v. Astrue, 452 Fed.Appx. 817, 825 (10th Cir. 2011)(reliance upon VE testimony consistent with DOT information satisfied requirements of phase two and three analysis); Doyal v. Barnhart, 331 F.3d 758, 760-61 (10th Cir. 2003)(ALJ may rely on information supplied by VE at phases two and three of step four); Gorian v.

Colvin, 180 F.Supp.3d 863, 874-76 (D.N.Mex. 2016)(same, reviewing several cases where ALJ relied upon VE testimony which referred to DOT for demands of claimant's PRW).

H. Consideration of all impairments alone and in combination

Plaintiff alleges that the ALJ failed to consider evidence of all of plaintiff's impairments and whether the combined effects of her conditions supported her claim of disability.[7] Plaintiff also alleges that the ALJ failed to develop the record regarding some of these conditions.[8] Specifically, plaintiff refers to evidence of hip pain, headaches, panic attacks, leg length discrepancy, arm pain/weakness, myalgia, broken sleep, anxiety, depression, IBS, gastritis and hypertension. The court rejects this argument for the following reasons.

First, the ALJ stated that he considered "all the evidence" and "all symptoms." (Tr. 12 and 15). Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)(taking ALJ's word that he considered all of claimant's symptoms in assessing her RFC). Further, it is clear from the ALJ's decision that he did consider the records of plaintiff's treating physician Dr. Davison, the neurological examiner Dr. Robert Murphy, and plaintiff's physical

---

[7] 42 U.S.C. § 1382c(a)(3)(G) provides that the defendant "shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."

[8] Disability hearings are nonadversarial and the ALJ has a duty to develop an adequate record consistent with the issues raised. Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007).

therapists.   (Tr. 16-17).   These records included information regarding most or all of the ailments or impairments plaintiff has listed in her brief, some of which appear to be an outgrowth of the back and neck pain which was the focus of plaintiff's complaints and the ALJ's decision.   Also, plaintiff testified before the ALJ regarding headaches, her medication for sleep and anxiety, and pain in her arms and legs.   (Tr. 36-37).   Finally, during the hearing plaintiff was represented by counsel who could have elicited additional evidence regarding any condition which significantly impaired his client.   The ALJ did not ignore the issues raised by plaintiff's counsel.   Under these circumstances, the court is convinced that the ALJ did consider evidence of any impairments or conditions which substantially contributed to plaintiff's reduced functional capacity or resulted from plaintiff's main complaint of back and neck pain.

The court is also convinced that the ALJ did not fail in his duty to develop the record.   See Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009)(under normal circumstances, the ALJ may reasonably rely on counsel to identify issues requiring further development – the issue must be substantial on its face); Flaherty, 515 F.3d at 1071 (rejecting claim that ALJ had duty to develop record where claimant failed to adduce evidence that migraines were a severe impairment); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988)(the diagnosis of an impairment is not sufficient to

sustain a finding of disability).  To reiterate, plaintiff has not identified evidence of impairments or conditions which were significant on their face but were ignored by the ALJ in spite of their potential contribution to plaintiff's disability.  The court finds that the ALJ's conclusion, upon consideration of all symptoms and all the evidence, that plaintiff's conditions did not cause plaintiff to be incapacitated from substantial gainful activity <u>during the relevant time period</u> is supported by substantial evidence.

  I. <u>Capacity for sustained work function</u>

  Finally, the court rejects plaintiff's contention that the denial of benefits should be overturned because the ALJ did not find that plaintiff could maintain adequate function throughout a full workday over a significant period of time.  The court agrees with defendant that a finding that plaintiff could sustain work on a regular and continuing basis was implicit in the ALJ's RFC assessment.  See <u>Giroux v. Berryhill</u>, 2017 WL 5473730 *4 (W.D.Okla. 11/14/2017); <u>Huston v. Berryhill</u>, 2017 WL 5473732 *3 (W.D.Okla. 11/14/2017); see also, 20 C.F.R. §§404.1520(e), 404.1545 (RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments").  The court notes in this regard that the ALJ asked the vocational expert whether an individual with plaintiff's RFC could "perform any of [plaintiff's] past work as actually performed or generally

performed in the national economy" and the vocational expert answered affirmatively.  (Tr. 58).

IV. <u>Conclusion</u>

As explained in this memorandum and order, the court rejects plaintiff's arguments to reverse and remand the denial of benefits to plaintiff.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 23rd day of July 2021, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge